**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| ALICIA NAILIA ROYAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:18-CV-123-HAB |
| | ) | |
| MYIKELL PAYNE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff alleges that Defendants, all representatives of the Indiana Department of Child Services ("DCS"), violated her rights during an investigation that led to the temporary removal of her children.[1] Defendants have moved for summary judgment, and that motion is fully briefed. (ECF Nos. 94, 100, 111).

**I.      Factual Background**

Plaintiff is a single mother of two daughters, M.R. and T.L. DCS' first involvement with the family was in early December 2017 when M.R. was seen in the emergency room. M.R. told emergency room personnel that she had been in a fight with Plaintiff, and medical records noted scratches on M.R.'s chest. This emergency room visit prompted a report to DCS of children in need of services, Defendant Myikell Payne ("Payne") was assigned to investigate.

The next evening, Defendant Danielle Baldwin ("Baldwin"), the on-call DCS investigator, received a call for immediate assistance from the Fort Wayne Police Department. Officers told Baldwin that Plaintiff had been arrested for battery of a dependent and had been taken to the Allen County Jail. Baldwin immediately reported to Plaintiff's home.

---

[1] The Court thanks attorneys Gary Johnson and Megan Torres for accepting the Court's appointment to represent Plaintiff and commends them on the quality of their advocacy.

After arriving at the home, Baldwin spoke with police officers on the scene and then interviewed M.R. and T.L. The children told Baldwin that M.R. and Plaintiff had been in an argument. M.R. said that Plaintiff threatened her, pushed her down onto a couch, and hit her repeatedly. T.L. saw the fight and called the police. Baldwin reported that M.R. had a cut on her chest and a "raised red bump" underneath her lip.

With Plaintiff in jail, the children were asked if there was a relative with whom they could stay. The children said they could stay with their grandmother, Vanya Royal ("Vanya"). Baldwin stated that she called Vanya and Vanya declined to care for the children. Instead, Vanya told Baldwin to call Plaintiff's cousin, Travis Royal ("Travis"). Travis was called and agreed to take the children. Baldwin took the children to Travis' home, confirmed the suitability of Travis and his wife, and left the children in Travis' care.

For her part, Vanya denies that this call ever occurred. Nor did Baldwin record the call in her written report of the investigation. That report, and Plaintiff's jail intake report, stated that Plaintiff provided Travis' name. Adding to the confusion, Plaintiff denies telling anyone that Travis should care for the children.

Plaintiff was released from jail the next day and met with Payne to discuss M.R. and T.L. During the meeting, Payne stated that Plaintiff told him that the argument with M.R. began after Plaintiff found a bag of M.R.'s boyfriend's clothes in M.R.'s room. Plaintiff told Payne that there was a "tussle" over the bag and Plaintiff sat on M.R. to stop M.R. from striking Plaintiff. Plaintiff denies making these statements.

Four days after Plaintiff's arrest, DCS filed a verified child in need of services ("CHINS") petition in the Allen Superior Court alleging that M.R. and T.L. were children in need of services. The court held an initial hearing the next day. Plaintiff attended the hearing. Following this hearing,

the court ordered that the children should remain in Travis' care. This hearing was the end of Payne and Baldwin's involvement in this case. The case was transferred to Defendant Selma Cakor ("Cakor") and her supervisor, Defendant Jennifer Fletcher ("Fletcher").

A detention hearing was held in the CHINS case one week later. During the hearing, the court noted that all charges against Plaintiff had been dropped. The Court also noted that Travis and his wife had requested that the children be removed from their care because of conflicts with Plaintiff after the placement. At the end of the hearing, the court ordered that T.L. be returned to Plaintiff but declined to return M.R. Plaintiff identified her uncle, Nakia Royal ("Nakia"), as a potential caregiver for M.R. Nakia did not want to care for M.R., however, so she was returned to Travis.

Over the next several months, Plaintiff claims that she experienced a "lack of cooperation from Defendants and almost complete disregard for her parental concerns." (ECF No. 100 at 4). Plaintiff alleges that Cakor and Fletcher ignored her concerns about M.R.'s boyfriend; that they ignored Plaintiff's requests to reschedule lost visitation time; and that they, along with Defendant James Pippen ("Pippen"), ignored her concerns about Travis. Plaintiff also claims that Cakor and Fletcher ignored her requests that M.R. be placed with Vanya. Plaintiff next claims that Fletcher and Pippen refused to remove Cakor from the case despite Cakor's "hostility and lack of concern." (*Id*. at 5). Most concerningly, Plaintiff alleges that Baldwin exaggerated M.R.'s injuries, describing a "days-old scratch" as a cut.

In May 2018, Cakor was removed from the case and it was reassigned to Erin Woods ("Woods"). Shortly after Woods took over the case, M.R. was removed from Travis' home (at his request) and placed with Vanya. Two months later, and after Plaintiff had completed court-ordered classes and therapy, M.R. was returned to Plaintiff's care.

## II.     Legal Discussion

### A.     *The Court has Jurisdiction Over Plaintiff's Claims*

Following the briefing on Defendants' motion for summary judgment, the Court asked the parties for briefs discussing the applicability of the *Rooker-Feldman* doctrine to this case. The parties have fully briefed the issue. (ECF Nos. 113, 115, 116). After reviewing the briefs, the Court determines that the doctrine does not apply.

Only the Supreme Court of the United States may review the judgment of a state court in civil litigation. Claims that directly seek to set aside a state-court judgment are de facto appeals and trigger the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Tr. Co*., 263 U.S. 413 (1923); *Sykes v. Cook Cty. Cir. Ct. Prob. Div*., 837 F.3d 736, 742 (7th Cir. 2016). Under the *Rooker-Feldman* doctrine, lower federal courts lack jurisdiction to review the decisions of state courts in civil cases. *See Gilbert v. Ill. Bd. of Educ*., 591 F.3d 896, 900 (7th Cir. 2010) (first citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 283–84 (2005); then citing *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008)). The *Rooker-Feldman* doctrine prevents lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced. *Exxon Mobil Corp*., 544 U.S. at 284. The *Rooker-Feldman* doctrine is jurisdictional, and thus it may be raised at any time by the court. *See 4901 Corp. v. Town of Cicero*, 220 F.3d 522, 527 (7th Cir. 2000).

The *Rooker-Feldman* doctrine "bars federal claims in two instances. The first involves a plaintiff's request of a federal district court to overturn an adverse state-court judgment. The second, and more difficult instance, involves federal claims that were not raised in state court or do not on their face require review of a state court's decision." *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012) (citing *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532–33 (7th Cir.

4

2004)). In the second case, "*Rooker-Feldman* will act as a jurisdictional bar if those claims are 'inextricably intertwined' with a state court judgment." (*Id*.) (quoting *Taylor*, 374 F.3d at 533). If the suit does not seek to vacate the judgment of the state court and instead seeks damages for independently unlawful conduct, it is not barred by *Rooker-Feldman*. *See Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 773 (7th Cir. 2014).

The parties agree that Plaintiff is not asking the Court to overturn a state-court judgment. The issue, then, is whether Plaintiff's claims are "inextricably intertwined" with the state-court decision to remove Plaintiff's children. Jurisprudence in this area is neither clear nor consistent. That said, the Court finds that the modern view of the *Rooker-Feldman* doctrine is a narrow one. Because Plaintiff does not directly challenge the state-court removal order, *Rooker-Feldman* does not deprive this Court of jurisdiction.

*Milchtein v. Chisholm*, 880 F.3d 895 (7th Cir. 2018), sets forth the modern view of the doctrine. There, the plaintiffs alleged that Wisconsin state officials discriminated against them based on religion during court proceedings that ended in two of their children being placed in foster care. The district court, believing that it was being asked to rule on the propriety of the state court's actions, dismissed the case on *Rooker-Feldman* grounds. *Id*. at 897.

Recognizing the confusing state of the case law, the Seventh Circuit began its discussion by noting that "[i]t isn't hard to find decisions in this circuit, and elsewhere, that extend the *RookerFeldman* [sic] doctrine to any arguments that were, or could have been, presented in the state suit, even though the federal plaintiffs do not want the state judgment to be changed, by stating that the arguments are 'inextricably intertwined' with the judgment." *Id*. "More recently, however, the Supreme Court has insisted that the jurisdictional *RookerFeldman* [sic] doctrine be distinguished from principles of issue and claim preclusion." *Id*. As a result, the Seventh Circuit

determined that "[t]he vital question . . . is whether the federal plaintiff seeks the alteration of a state court's judgment." *Id*. at 898. Because the plaintiffs did not seek an alteration of the state-court order, the Seventh Circuit concluded that *Rooker-Feldman* did not apply. *Id*.

*Milchtein* has since been used by several courts to defeat the application of *Rooker-Feldman* in cases like this one. For instance, in *Sanders v. Ind. Dept. of Child Servs.*, 806 Fed. Appx. 478 (7th Cir. 2020), the Seventh Circuit, citing *Milchtein*, stated that "a claim that [DCS] manufactured charges . . . because of . . . race and gender would not implicate *Rooker-Feldman*." *Sanders*, 806 Fed. Appx. at 481. Similarly, the Southern District concluded that *Rooker-Feldman* did not apply to claims by foster children that DCS improperly handled their cases, again citing *Milchtein*. *Ashley w. by Next Friend Durnell v. Holcomb*, 467 F. Supp. 3d 644, 649–50 (S.D. Ind. 2020).

The Court recognizes, as the Seventh Circuit did in *Milchtein*, that it is possible to find much broader interpretations of the doctrine. Defendants identify just such a decision in *Pettit v. Ind. Dept. of Child Servs.*, 2015 WL 133736 (S.D. Ind. Jan. 9, 2015), where claims strikingly like those advanced by Plaintiff were found to conflict with *Rooker-Feldman*. *Pettit*, 2016 WL 133736, at *2–4. But the Court finds that those decisions espouse a view of the doctrine that is no longer *en vogue*. Rather, the Court believes that Plaintiff's view of the doctrine more closely hews to its current understanding.

Plaintiff does not ask the Court to alter the Allen Superior Court's ruling. Thus, *Rooker-Feldman* does not apply here, and the Court has jurisdiction to rule on the merits of Plaintiff's claims.

**B.**     ***Defendants are Entitled to Qualified Immunity***

**1.**     *Summary Judgment Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in its favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

2.      *The Right Plaintiff Seeks to Vindicate is not Clearly Established*

Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). District courts have discretion to decide which of the two prongs of the qualified immunity analysis to tackle first. *Person v. Callahan*, 555 U.S. 223, 236 (2009).

The Court recognizes that the parties' versions of events do not line up perfectly, particularly about the alleged injuries to M.R. That said, the mere existence of disputed facts is not enough to defeat summary judgment. Instead, for Plaintiff to prevail, the disputed facts must be material to the question of qualified immunity. *Hernandez v. Cook Cty. Sheriff's Off.*, 634 F.3d 906, 916 (7th Cir. 2011). Even if the Court accepts all Plaintiff's facts as true, the right she seeks to vindicate is not clearly established.

Two recent decisions from the Supreme Court of the United States have clarified what it means for a right to be "clearly established." *See City of Tahlequah, Oklahoma v. Bond*, 142 S.Ct. 9 (2021); *Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4 (2021). Both cases emphasize that clearly established law cannot be defined "at too high a level of generality." *Bond*, 142 S.Ct. at 11. "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. (internal quotations omitted). Thus, to show a violation of clearly established law,

Plaintiff must identify a case that put Defendants on notice that their specific conduct was unlawful. *Cortesluna*, 142 S.Ct. at 8.[2]

Plaintiff has failed in this task. The issues with her identified cases are two-fold. First, cases from federal district courts cannot clearly establish the law because "they are not authoritative as precedent and therefore do not establish the duties of nonparties." *Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995). But even if Plaintiff's cases were precedential, they lack the specificity that the Supreme Court requires. *Hodgkins v. Peterson*, 2000 WL 33128726 (S.D. Ind. Dec. 14, 2000), addresses a challenge to Indianapolis' curfew law. *Voors v. Nat'l. Women's Health Org., Inc.*, 611 F. Supp. 203 (N.D. Ind. 1985), is a procedural opinion addressing a motion to remand. *Norris v. Bd. of Educ. of Greenwood Cmty. Sch. Corp.*, 797 F. Supp. 1452 (S.D. Ind. 1992), deals with a school corporation's failure to accommodate a student with disabilities. Finally, *Archem, Inc. v. Simo*, 549 N.E.2d 1054 (Ind. Ct. App. 1990), is a breach of contract case. None of these cases could put these Defendants on notice that these alleged acts violated a clearly established law.

With no other cases offered, Plaintiff has failed to identify a single precedent finding a constitutional violation under similar circumstances. As a result, Defendants are entitled to qualified immunity. *Bond*, 142 S.Ct. at 12.

## III.    Conclusion

For these reasons, Defendant's Motion for Summary Judgment (ECF No. 93) is GRANTED. The Clerk is DIRECTED to enter judgment for Defendants and against Plaintiff.

---

[2] There is some suggestion in *Cortesluna* that the case must come from the Supreme Court of the United States. *Cortesluna*, 142 S.Ct. at 8 ("Even assuming that Circuit precedent can clearly establish law for purposes of § 1983 . . ..")

SO ORDERED on January 6, 2022.

 s/ Holly A. Brady

JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT